**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

RUTH RODGERS,

    Plaintiff,

vs.                                                                               CASE NO. 3:05-cv-543-J-TEM

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____

**ORDER AND OPINION**

This matter is before the Court on Plaintiff's complaint (Doc. #1), seeking review of the final decision of the Commissioner of Social Security (the Commissioner) denying Plaintiff's claims for disability insurance benefits (DIB) and supplemental security income disability payments (SSI). Plaintiff filed a legal brief in opposition to the Commissioner's decision (Doc. #29, P's Brief). Defendant filed his brief in support of the decision to deny disability benefits (Doc. #30, D's Brief). Both parties have consented to the exercise of jurisdiction by a magistrate judge, and the case has been referred to the undersigned by the Order of Reference dated April 8, 2008, (Doc. #23). The Commissioner has filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number). Upon review of the record, the Court found the issues raised by Plaintiff were fully briefed and concluded oral argument would not benefit the Court in its making its determinations. Accordingly, the matter has been decided on the written record. For the reasons set out herein, the decision is **REVERSED and the case is**

**remanded for further proceedings**.

## I. Procedural History

In the instant action, Plaintiff protectively filed applications for a period of disability, disability insurance benefits and supplemental security income disability payments on September 17, 2002 (Tr. 51-53, 212-15). Plaintiff alleged that she became disabled on April 15, 1995 (Tr. 51, 213). However, because Plaintiff had previously filed applications for DIB and SSI, which were denied and dismissed at the reconsideration phase, Plaintiff's alleged onset date cannot be prior to October 28, 1997 (Tr. 13).[1] Plaintiff initially asserted she was unable to work due to tumors in both lungs, dizziness, severe anemia and arthritis (Tr. 57-58, 66). In the Disability Report-Adult signed by Plaintiff on September 24, 2002, Plaintiff also noted she stopped working to take care of her terminally ill mother, but stated she had "very bad" arthritis also (Tr. 57-66).[2] In the Reconsideration Disability Report dated January 9, 2003, Plaintiff added nausea, breathing problems, headaches, vision problems and low blood pressure to the list of ailments that prevent her from working (Tr. 71-74).

After being denied initially and upon reconsideration, Plaintiff requested a hearing, which was held on September 13, 2004 in Daytona Beach, Florida before administrative law judge (ALJ) Edward Bayouth-Babilonia (Tr. 231-66). Plaintiff appeared and testified

---

[1]The Court notes this information is stated in the ALJ's decision and is not challenged by either party.

[2]It is unclear to the Court whether Plaintiff or Plaintiff's daughter actually completed the Disability Report-Adult. It is signed by Plaintiff. Plaintiff indicated her daughter fills out all her paperwork (Tr. 74, 78), and parts of the form are worded in third person, while other parts are worded in first person. On these facts, the Court takes notice that Plaintiff's daughter would be acting on behalf of Plaintiff in completion of any Social Security forms.

at the hearing, as did vocational expert (VE) Donna Mancini. Plaintiff was represented by attorney Richard Schwartz at the administrative hearing. On December 21, 2004, ALJ Bayouth-Babilonia issued a hearing decision denying Plaintiff's claims (Tr. 10-21). The Appeals Council (AC) denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner (Tr. 5-7).

The instant complaint was filed in federal court on June 13, 2005 (Doc. #1) by attorney Juan C. Gautier, Esq. The complaint was dismissed without prejudice by the Hon. John H. Moore, II, on September 27, 2005 for Plaintiff's failure to comply with an order of the Court (Doc. #9). New counsel entered the case and subsequently the Court granted Plaintiff's Motion for Relief of Judgment and directed the Clerk to reopen the instant action (Doc. #20, Court Order). Plaintiff's current counsel of record, Ms. Chantal Harrington, Esq., ultimately filed Plaintiff's Brief (Doc. #29).

The Court has reviewed and given due consideration to the record in its entirety, including the parties' arguments presented in their briefs and the materials provided in the transcript of the underlying proceedings.

## II. Social Security Act Eligibility and the Standard of Review

Plaintiff is entitled to disability benefits when she is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less that 12 months. 20 C.F.R. §§ 404.1505, 416.905.[3] For purposes of determining whether a claimant is disabled, the law and regulations governing a claim for disability insurance

---

[3]Unless otherwise specified, all references to 20 C.F.R. will be to the 2008 edition.

3

benefits are identical to those governing a claim for supplemental security income benefits. *Patterson v. Bowen*, 799 F.2d 1455, 1456, n. 1 (11th Cir. 1986). The Commissioner has established a five-step sequential evaluation process for determining whether Plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. §§ 404.1520, 416.920. Plaintiff bears the burden of persuasion through step four, while at step five the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

The scope of this Court's review is generally limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of facts are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla - i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560.

The Commissioner must apply the correct law and demonstrate that he has done so. While the court reviews the Commissioner's decision with deference to the factual

findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of HHS*, 21 F.3d 1064, 1066 (11th Cir. 1994). Therefore, in determining whether the Commissioner's decision is supported by substantial evidence, the Court has not re-weighed the evidence, but has determined whether the record, as a whole, contains sufficient evidence to permit a reasonable mind to conclude that the Plaintiff is not disabled. *Bloodsworth v. Heckler*, 703 F.2d 1233 (11th Cir. 1983).

### III. Analysis

Plaintiff Ruth Rodgers was born on March 3, 1953 (Tr. 51). Thus, she was fifty-one (51) years old when the ALJ issued his decision. The record reveals Plaintiff completed the eleventh grade in high school and has no further formal education (Tr. 64). She has a past relevant work history as a hotel housekeeper (Tr. 59).

Plaintiff raises three issues on appeal. First, Plaintiff asserts the Commissioner erred in relying on vocational expert testimony that classified Plaintiff's past relevant work as a housekeeper/cleaner under the Dictionary of Occupational Titles (DOT)[4] classification number 321.137-010 because that DOT occupation does not accurately portray Plaintiff's past work (P's Brief at 1). Second, Plaintiff claims the Commissioner erred in failing to explain why he did not credit the limitations set forth by the state agency non-examining physicians who found Plaintiff would be restricted to occasional balancing and she should avoid concentrated exposure to fumes and dust (P's Brief at 1). Plaintiff's final argument

---

[4]The references to "DOT" are short form citations to the United States Dep't of Labor, *Dictionary of Occupational Titles* (4th ed. 1991). The Commissioner has taken administrative notice of the reliability of job information provided in the DOT. *See* 20 C.F.R. §§ 404.1566(d), 416.966(d).

5

is that the Commissioner erred in finding Plaintiff's dizziness was not supported by the evidence and in failing to credit the effect of severe dizziness on Plaintiff's functioning (P's Brief at 1).

The Commissioner argues the ALJ's decision is supported by substantial evidence and any error in the decision should be found harmless. More specifically, the Commissioner concedes the DOT classification number 321.137-010 for housekeeper outlines the duties of a housekeeping supervisor, which do not correspond with the job duties in Plaintiff's past work, but asserts such error is harmless because there is a DOT entry that does correspond to Plaintiff's past relevant work that falls within the bounds of Plaintiff's residual functional capacity (D's Brief at 6-11). The Commissioner asserts the ALJ's omission of the limitations the DDS physicians noted in their evaluations of Plaintiff's RFC is harmless error because inclusion of those limitations would not change the ALJ's decision that Plaintiff could perform her past relevant work, or an alternative finding that Plaintiff could perform other work in the national economy (D's Brief at 10-11). As argument regarding Plaintiff's last issue, the Commissioner reviews the medical records pertaining to Plaintiff's dizziness and notes the ALJ did not find the dizziness to be a severe impairment (D's Brief at 11-14).

The Court finds the Commissioner's arguments ignore obvious flaws in the ALJ's decision, and such flaws require the case be remanded for reconsideration. Apparently the Commissioner would have the Court ignore the ALJ's specific reference to an inaccurate identification of Plaintiff's past relevant work and make a finding that the ALJ did not make. Much of the Commissioner's brief discusses an alternative step five finding, even though the ALJ did not extend his analysis of Plaintiff's alleged disability beyond step four. Such

expansion of the harmless error doctrine cannot be made.

The Court's independent review of the record as a whole, as required under *Bloodsworth*, 703 F.2d at 1239, reveals the ALJ has misstated or misconstrued the record evidence on a number of points and has made contrary findings. When the Court cannot discern the basis for the ALJ's decision, a sentence four remand is often appropriate to allow the ALJ to explain the basis for his decision. *Falcon v. Heckler*, 732 F.2d 827, 830 (11th Cir. 1984). In this case, the Court finds substantial evidence does not support key findings of fact and the ALJ has contradicted himself on a particular finding. Thus, the ALJ's decision was not reached in accordance with the Regulations and the law of this circuit, and is not supported by substantial evidence.

### Harmless Error

Various courts, including this one, have addressed harmless error with their findings. In *Diorio v. Heckler*, 721 F.2d 726 (11th Cir. 1983), the court found harmless error when the ALJ made erroneous statements of fact, but applied the proper legal standard when considering the vocational factors in application of the GRIDS. *Id*. at 728. In *Wright v. Barnhart*, 153 Fed. Appx. 678 (11th Cir. 2005), the court noted though although the ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and normally failure to do so is reversible error, such failure was harmless error when correct application of the Regulations would not contradict the ALJ's ultimate findings. *Id*. at 684.[5] This Court found harmless error when the ALJ failed to discuss a treating

---

[5]Unpublished opinions of the Eleventh Circuit Court of Appeals are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

7

physician's opinion, but even giving controlling weight to the opinion would not have changed the outcome. *Parton v. Astrue*, No. 3:07-cv-63-J-TEM, 2008 WL 897094 (M.D. Fla. Mar. 31, 2008).

In *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989), the court found no principle of administrative law or common sense requires remand in quest of a perfect opinion unless there is reason to believe the remand might lead to a different result. In *Ward v. Commissioner of Social Security*, 211 F.3d 652, 656 (1st Cir. 2000), the court held that while an error of law by the ALJ may necessitate a remand, a remand is not essential if it will amount to no more than an empty exercise. Here, it is not clear to the Court that remand would amount to an empty exercise. In fact, proper consideration of Plaintiff's dizziness impairment and the resulting impact, if any, on Plaintiff's RFC may or may not alter the outcome of Plaintiff's claims.

*Plaintiff's Residual Functional Capacity and Past Relevant Work*

At the fourth step of the Commissioner's analysis, the ALJ must determine the claimant's RFC, which is the most an individual can do despite his or her limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ is required to consider all of the claimant's impairments, including those which are not "severe," to determine the claimant's RFC. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2) Upon determining the claimant's RFC, the ALJ is then tasked with finding whether the individual can return to past relevant work, given the limitations of his or her residual functional capacity. 20 C.F.R. §§ 404.1520(e), (f); 416.920(e), (f).

In this case, the ALJ determined Plaintiff had the RFC to perform the full range of medium work (Tr. 19 & 20, Finding No. 7) and concluded his sequential evaluation at step

8

four, finding Plaintiff could return to her past relevant work. The ALJ relied heavily on the testimony of the vocational expert (VE) to determine Plaintiff's past relevant work. In fact, the ALJ went so far as to cite to the specific DOT number identified by the VE as the accurate occupational title corresponding with Plaintiff's past relevant work (*see* Tr. 19).

The VE was present throughout the administrative hearing and heard Plaintiff's statements concerning her past work (*see* Tr. 259). Based on the information heard, the VE identified Plaintiff's past relevant work as that of a housekeeper listed under DOT number 321.137-010 (Tr. 259-62).[6] The Commissioner now concedes that identification was in error, yet there is no getting around the fact the ALJ relied on the erroneous testimony and cited to the incorrect occupational title in his decision. Such a flawed analysis does not reflect the careful consideration of the evidence with which the ALJ is tasked.

**Plaintiff's Severe Impairments**

*Plaintiff's Back Pain*

Notably, in this case the ALJ found Plaintiff had multiple pulmonary nodules, characterized as being non-malignant, and pain in her right arm and back, which were severe impairments within the meaning of the Regulations (Tr. 17 and Tr. 19, Finding No. 3). However, this finding regarding Plaintiff's back pain directly contradicts the ALJ's analysis and his finding in the body of the decision wherein it is clearly stated, "There is no

---

[6]*See* I United States Dep't of Labor, *Dictionary of Occupational Titles* § 321.137-010; II United States Dep't of Labor, *Dictionary of Occupational Titles,* Appx. C (4th ed. 1991) (Housekeeper, Floor Housekeeper). *Also see,* I United States Dep't of Labor, *Dictionary of Occupational Titles* § 323.687-014 (Cleaner, Housekeeping, Maid) *and* P's Brief at 6 (asserting Plaintiff's past relevant work as actually performed exceeded the ALJ's residual functional capacity assessment of Plaintiff's work ability).

medical basis for [Plaintiff's] allegations of vertigo and back pain." (Tr. 18.)   It is difficult to fathom how the ALJ can determine Plaintiff's claimed back pain to be a severe impairment under the Regulations, yet contemporaneously find there is no medical basis in the record for the asserted back pain.  Obviously, findings that conflict can not both be based on substantial evidence.

As the ALJ correctly notes, the Regulations define a medically determined impairment as "severe" if the impairment significantly limits an individual's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520 and 416.920; *see also* Tr. 15.  The Regulations also specify that a claimant's impairments must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques; in other words, mental or physical impairments must be established by medical evidence. 20 C.F.R. §§ 404.1508, 404.1527, 416. 908, 416.927.  Thus, for an alleged impairment to be severe within the meaning of the Social Security Act, there must be a medical basis for the impairment.

*Plaintiff's Allegations of Vertigo*

The ALJ's finding there is "no medical basis" for Plaintiff's allegations of vertigo (Tr. 18) is also flawed.  There are references to dizziness and/or vertigo throughout the submitted medical records (*e.g.*, Tr. 81-84, treatment and evaluation records from Dr. Becki D. Melton, M.D.; Tr. 95-98, disability examination report of Dr. Jack. Pulwers, Jr. M.D.; Tr. 108-85, treatment notes and lab reports from Dr. Morris Carter, M.D.; Tr. 188-211, emergency room treatment notes and lab reports from Flagler-Memorial Hospital in Palm

10

Coast, FL and Bunnell, FL).[7]

Plaintiff's testimony indicated her "dizzy spells" began sometime in 2002 (Tr. 246-47). On April 1, 2002, Plaintiff presented to her treating physician, Dr. Morris Carter, M.D., with complaints of shortness of breath, dizzy spells and sharp pain in left arm (Tr. 174). On that same date, Dr. Morris sent Plaintiff for chest x-rays with the diagnoses of anemia, fatigue and vertigo (Tr. 168). Dr. Morris' various diagnoses for Plaintiff include vertigo (*e.g.* Tr. 168, 108), Dr. Pulwers' diagnoses of Plaintiff's condition include vertigo (Tr. 98), the Flagler Memorial Hospital ER physician diagnosed Plaintiff with vertigo, which he treated with the drug meclizine[8] on July 15, 2002 (Tr. 196-99). In August 2002, Plaintiff followed-up with Dr. Melton with complaints of dizziness that had resolved with over the counter medications, but in September 2002 again presented with unresolved complaints of dizziness and nausea occurring on a daily basis (Tr. 84). Dr. Melton noted this condition was being treated with medication without much success (Tr. 84). On July 15, 2003, Plaintiff's treating physician prescribed Antivert for Plaintiff's vertigo (Tr. 112). On July 22, 2003, Plaintiff was sent for a bilateral doppler ultrasound to rule out carotid stenosis as a possible cause of the vertigo (Tr. 108). On February 15, 2004, Plaintiff went to the

---

[7]"Vertigo is the feeling that you or your environment is moving when no movement occurs. Imprecisely called dizziness, the term vertigo is the specific term used to describe an illusion of movement." Vertigo is typically caused by problems in the brain or inner ear. *See* http://www.webmd.com/a-to-z-guides/vertigo (last visited February 26, 2009).

[8]Meclizine is an antihistamine used to prevent or treat nausea, dizziness and loss of balance (vertigo). It is the generic drug equivalent of brand name drugs Dramamine II and Antivert. Meclizine is available in over the counter dosages with the brand name Dramamine II, and is prescribed at varying dosages under the brand name Antivert. See http://www.webmd.com/drugs/drug-4520-Meclizine+Oral.aspx (last visited February 26, 2009).

emergency room at Flagler Hospital in Palm Coast, FL, with complaints of neck-shoulder-right arm pain and vertigo (Tr. 188-94). Plaintiff was treated and released with prescriptions of Vioxx for the pain and Antivert for the vertigo (Tr. 190, 194). In sum, review of the record reveals, substantial evidence does not support the ALJ's finding of "no medical basis" for allegations of vertigo.

Furthermore, the ALJ's statement that Plaintiff testified she received no treatment for her dizzy spells (Tr. 17) and his finding that she is not being treated for this condition (Tr. 18), misconstrue the record evidence. During the September 13, 2004 administrative hearing, Plaintiff testified that she did not have a treating doctor at that point in time and was currently taking only over the counter medications (Tr. 242-43). When the ALJ asked Plaintiff what prevented her from sitting for more than thirty (30) minutes, she responded "the dizzy spells" (Tr. 246). The ALJ then remarked, "The dizzy spells. And nobody is treating you for that?" (Tr. 246.) To which Plaintiff replied, "No. I don't have a doctor." (Tr. 246.) This statement appears to be the only evidence that Plaintiff was not being treated for her vertigo. Taking this testimony out of context is simply misleading.

Plaintiff has repeatedly complained of dizziness that affects her ability to function. Review of the record demonstrates Plaintiff complained of dizziness as a severe impairment when filing for disability benefits (Tr. 58, 60). In fact, Plaintiff noted dizziness as an impairment on every SSA document she completed (Tr. 57-66, 71-74, 75-78, 79-80).[9] Plaintiff's complaints of dizziness to medical sources are discussed above.

At Step 2 of the five-step evaluation process, the ALJ is called upon to determine

---

[9]See note 2, *supra*.

whether a claimant's impairments are severe. By definition, this inquiry is a "threshold" inquiry. It allows only claims based on the most trivial impairments to be rejected. In this Circuit, an impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience. A claimant need show only that her impairment is not so slight and its effect not so minimal. *McDaniel v. Bowen*, 800 F. 1026, 1031 (11th Cir. 1986).[10]

Plaintiff's medical records demonstrate complaints of, and treatment for, vertigo from at least 2002 through 2004. Even the SSA's retained examining physician accepted Plaintiff's complaints as true and diagnosed vertigo. Under precedent in this circuit, the Court finds Plaintiff made the requisite showing that the dizziness was a severe impairment that could be expected to interfere with her ability to work. *See McDaniel v. Bowen*, 800 F. 1026, 1031 (11th Cir. 1986).[11]

---

[10] In making this finding, the Court expresses no opinion on the ALJ's determination of Plaintiff's overall credibility. Where the ALJ decides not to credit a plaintiff's testimony about an asserted condition, the ALJ must articulate specific and adequate reasons based on substantial evidence for so doing, or the decision must be obvious as to the credibility finding. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991). When making a credibility determination, the decision maker's opinion must indicate an appropriate consideration of the evidence. *Tieniber v. Heckler*, 720 F.2d 1251, 1255 (11th Cir. 1983) (internal citation omitted). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. *Foote v. Chater*, 67 F.3d at 1561-62; *see also* 42 U.S.C. § 405(g) (the findings of the Commissioner as to any fact are conclusive if supported by substantial evidence).

[11] As Plaintiff has presented no evidence regarding her symptoms of dizziness or the diagnosis of vertigo prior to April 1, 2002, the Court notes this finding is only applicable to Plaintiff's SSI claim because Plaintiff's date last insured for the DIB claim has been established as September 30, 1999 (*see* Tr. 55).

In determining whether or not a claimant is disabled, the ALJ must consider all of a claimant's symptoms, and "the extent to which those symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §§ 404.1529. 416.929. Here, the Court is unable to ascertain what consideration the ALJ gave to Plaintiff's claims of dizziness, other than his erroneous findings. In *Baker v. Barnhart*, No. 03-C-2291, 2004 WL 2032316 (N.D. Ill. Sept. 9, 2004),[12] the court ordered the case remanded to the Commissioner because the ALJ had misstated the record and failed to address the physical exertional limitations found by the plaintiff's treating physician. *Id.* at *7-*8. The Court finds *Baker v. Barnhart* is persuasive, given the facts of this case.

## **Miscellaneous Errors**

The Court's independent review of the record as a whole, as required under *Bloodsworth v. Heckler*, 703 F.2d at 1239, reveals the ALJ has misquoted or misconstrued the record on other points. For example, the ALJ begins his evaluation of the evidence with the erroneous statement that the claimant was insured for disability benefits through December 30, 1999 (Tr. 14). The ALJ later finds Plaintiff was insured for disability benefits through September 30, 1999 (Tr. 19). The record evidence supports a DIB insured status through September 30, 1999 (Tr. 55, 234). In discussing the limitations to which Plaintiff testified, the ALJ erroneously stated Plaintiff testified she could walk to her sister's house, that was three houses away (Tr. 17). In fact, Plaintiff testified she had attempted to walk to her sister's house the day before the hearing, but had been unable to do so (Tr. 245).

---

[12]Unpublished opinions are not considered binding authority; however, such opinions are cited throughout this Order and Opinion for persuasive authority.

## IV. Conclusion

It is essential that the reviewing court scrutinize the record in its entirety to determine the *reasonableness* of the decision reached by the ALJ. *Bridges v. Bowen*, 815 F.2d 622, 624-25 (11th Cir. 1987) (emphasis added) (internal citation omitted). A reviewing court must be able to determine from the ALJ's opinion whether the ALJ applied the statutory requirements and the Regulations as construed by this circuit; otherwise, the reviewing court cannot effectively perform its duty. *Jamison v. Bowen*, 814 F.2d 585, 588-89 (11th Cir. 1987). The function of the reviewing court is to "'ensure that the decision [of the ALJ] was...carefully considered in light of *all the relevant facts*.'" *Id*. at 590 (emphasis added) (citation omitted).

The Court is precluded from reweighing the evidence anew, but it is nonetheless obligated to review the record in its entirety. *Foote*, 67 F.3d at 560. The Court's independent review reveals the record here differs from the ALJ's factual findings in the above-mentioned instances. Thus, it is impossible to say the ALJ's decision is supported by substantial evidence. While each of the aforementioned misstatements and/or mis-characterizations of the record when viewed individually may not constitute such error as to require reversal, the misstatements mentioned above and the contradictory finding, taken as a whole, reveal an inaccurate and inadequate review of the record.

For the foregoing reasons, the decision of the Commissioner is not supported by substantial evidence or decided according to proper legal standards. Accordingly, the Commissioner's decision is hereby **REVERSED and REMANDED** for additional proceedings consistent with this Order and Opinion.

Plaintiff is cautioned, however, that this Order and Opinion does not suggest Plaintiff is entitled to disability benefits. Rather, it speaks only to the process the ALJ must engage in and the findings and analysis the ALJ must make before determining whether Plaintiff is disabled within the meaning of the Social Security Act. *Phillips v. Barnhart*, 357 F.3d 1232, 1244 (11th Cir. 2004).

Upon remand, the Commissioner shall re-evaluate Plaintiff in accordance with the applicable Regulations and prevailing case law. The additional proceedings should include, but are not limited to: assessment of the severity of all of Plaintiff's medically determinable impairments and, in light thereof, re-assessment of Plaintiff's RFC; consideration of the opinions of all medical sources; re-evaluation of Plaintiff's subjective complaints; and, if warranted, additional vocational expert testimony.

## V. Directions as to Judgment

The Clerk of Court is directed to enter judgment consistent with this Order and Opinion, and thereafter to close the file. The judgment shall state that if Plaintiff were to ultimately prevail in this case upon remand to the Social Security Administration, any motion for attorney fees under 42 U.S.C. § 406(b) must be filed within fourteen (14) days of the Commissioner's final decision to award benefits. *See Bergen v. Commissioner of Social Security*, 454 F.3d 1273, 1278 (11th Cir. 2006); *compare* Fed. R. Civ. P. 54(d)(2)(B); M.D. Fla. Loc. R. 4.18(a).

**DONE AND ORDERED** at Jacksonville, Florida this 2nd day of March, 2009.

*Thomas E. Morris*
THOMAS E. MORRIS
United States Magistrate Judge

Copies to counsel of record